IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Hartford Fire Insurance Company,       )
Trumbull Insurance Company, and        )        C.A. No.  6:21-04049-HMH
Hartford Casualty Insurance Company    )
                                       )        **OPINION & ORDER**
                    Plaintiffs,        )
                                       )
            vs.                        )
                                       )
Christopher Toates,                    )
                                       )
                    Defendant.         )

        This matter is before the court on the Defendant's motion to dismiss pursuant to Rule

12(c)[1] of the Federal Rules of Civil Procedure, or in the alternative, to stay the case until final

judgment is entered in the related state action.  Defendant's motion also requests that the court

decline to exercise jurisdiction over this Declaratory Judgment action pursuant to Nautilus Ins.

Co. v. Winchester Homes, Inc., 15 F.3d 371 (4th Cir. 1994).  In addition, Justin Williams

("Williams") has filed a motion to intervene in the instant action pursuant to Rules 24(a) and (b)

of the Federal Rules of Civil Procedure.  After thorough review, the court grants Defendant's

motion, exercises its discretion to dismiss this Declaratory Judgment action, and dismisses

Williams' motion to intervene as moot.

---

        [1] While Toates' motion to dismiss asserts that he seeks dismissal pursuant to Rule
12(b)(6), he acknowledges in his reply that the motion is properly viewed as a motion to dismiss
pursuant to Rule 12(c).  (Reply 6, ECF No. 40) (citing Fed. R. Civ. P. 12(h)(2)).

---

demanded that they tender the policy limits under the liability and umbrella policies, and defend and indemnify Toates pursuant to the terms of those policies.  (Compl. ¶¶ 22, 24, ECF No. 1.)

On September 17, 2021, Williams filed a complaint against Toates in South Carolina state court in the Underlying Tort Action asserting claims for negligence and recklessness arising out of the Accident.  (Mot. Dismiss Ex. A (Underlying Tort Action Compl.), ECF No. 29-2.)  Subsequently, on December 15, 2021, the same day the instant declaratory judgment action was filed, CDJ filed a declaratory judgment action, Joyner v. Toates, No. 2021-CP-23-05934 (Greenville Cnty., S.C. Ct. C.P.) in South Carolina state court ("State DJ Action"), seeking a declaration that (1) "[t]he Independent Contractor Agreement constitutes a valid and enforceable contract between CDJ and Mr. Toates ;" (2) "Toates was an independent contractor of CDJ on October 7, 2020;" (3) "Toates was not an employee of CDJ;" (4) "[e]ven if Mr. Toates had been an employee of CDJ on October 7, 2020, his conduct which caused the injuries to Mr. Williams was outside the scope of his employment [with] CDJ;" and (5) "CDJ cannot be held vicariously liable for the actions of Mr. Toates on October 7, 2020."  (Mot. Dismiss Ex. D (State DJ Action Compl. 6), ECF No. 29-5.)

On January 7, 2022, Williams filed an amended complaint in the Underlying Tort Action to add additional allegations that Toates was acting within the scope of his employment with CDJ when the Accident occurred.  (Mot. Dismiss Ex. C (Underlying Tort Action Am. Compl.), ECF No. 29-4.)  On January 20, 2022, Toates answered and asserted counterclaims in the instant action for attorney fees and costs.  (Ans., ECF No. 10.)  On February 16, 2022, CDJ amended its complaint in the State DJ Action to add Williams as a defendant.  (Mot. Int. Ex. A (State DJ Action Am. Compl.), ECF No. 32-3.)  On May 15, 2022, Williams and Toates entered into a

covenant not to execute any judgment obtained against Toates in the Underlying Tort Action. (Resp. Opp'n Mot. Int. Ex. A (Covenant), ECF No. 35-1.)

On June 7, 2022, Toates filed a motion to dismiss for failure to state a claim in the instant action, asserting that (1) this action violates the rule against claim splitting; (2) the court should decline jurisdiction pursuant to the factors set forth in Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994), overruled on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277 (1995); or (3) the court should stay discovery until the two related state court actions are concluded.  (Mot. Dismiss & Mot Stay, ECF Nos. 29, 30.)  On June 8, 2022, Williams filed a motion to intervene in the instant action.  (Mot. Int., ECF No. 32.)  On June 22, 2022, Plaintiffs filed responses in opposition to the motion to dismiss and motion to intervene. (Resps. Opp'n, ECF Nos. 34, 35.)  Williams filed a reply on June 28, 2022, and Toates filed a reply on June 29, 2022.  (Replies, ECF Nos. 39, 40.)  This matter is now ripe for consideration.

## II. DISCUSSION OF THE LAW

### a. Timeliness

As an initial matter, Plaintiffs assert that this motion is untimely because Toates failed to raise any of the Rule 12(b) affirmative defenses in his answer.  (Resp. Opp'n 3-4, ECF No. 34.) Rule 12(b) provides that "[a] motion asserting any [Rule 12(b)] defenses must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  However, only those defenses listed in Rule 12(b)(2)-(5) are waived by failing to include them in a responsive pleading.  Fed. R. Civ. P. 12(h).  Toates has not filed the instant motion pursuant to one of the affirmative defenses that may be waived under Rule 12(h).  Indeed, "[f]ailure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal

4

defense to a claim may be raised . . . by a motion under Rule 12(c); or . . . at trial." Fed. R. Civ.

P. 12(h)(2). Rule 12(c) provides that, "[a]fter the pleadings are closed — but early enough not

to delay trial — a party may move for judgment on the pleadings." Fed R. Civ. P. 12(c).

Accordingly, Plaintiffs' argument is without merit.

### b. Failure to Join a Necessary Party

While this issue was not raised by the parties, the court finds that this action should also

be dismissed for failure to join a necessary and indispensable party, CDJ. Rule 19 of the Federal

Rules of Civil Procedure sets forth

> a two-step inquiry in which courts must first ask whether a party is necessary to a
> proceeding because of its relationship to the matter under consideration pursuant to
> Rule 19(a). If a party is necessary, it will be ordered into the action. When a party
> cannot be joined because its joinder destroys diversity, the court must determine
> whether the proceeding can continue in its absence, or whether it is indispensable
> pursuant to Rule 19(b) and the action must be dismissed.

Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999) (internal quotation and citation

omitted). "Though a nonparty may formally claim an interest in an action, a 'court with proper

jurisdiction may also consider sua sponte the absence of a required person and dismiss for

failure to join.'" Gunvor SA v. Kayablian, 948 F.3d 214, 220 (4th Cir. 2020) (quoting Republic

of Philippines v. Pimentel, 553 U.S. 851, 861 (2008)).

Rule 19(a) provides that necessary parties are those that "in [their] absence, the

court cannot accord complete relief among existing parties," and those "that [] claim[] an

interest relating to the subject of the action and [are] so situated that disposing of the action in

[their] absence may:

> (i) as a practical matter impair or impede the person's ability to protect the
> interest; or

5

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)-(B).  "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).

The factors for the court to consider include:

(1)    the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
(2)    the extent to which any prejudice could be lessened or avoided by:
       (A) protective provisions in the judgment;
       (B) shaping the relief; or
       (C) other measures;
(3)    whether a judgment rendered in the person's absence would be adequate; and
(4)    whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Id.

"In an insurance coverage action, the necessary and interested parties are the insurer, insured, and claimants."  Hudson Specialty Ins. Co. v. Magio's Inc., Case No. 18-80299-CIV-COHN/MATTHEWMAN, 2018 WL 8259544, at *3 (S.D. Fla. June 14, 2018) (unpublished) (quoting Tower Ins. Co. of New Tork v. Aledith Enterprises, Inc., 12-22689-CIV, 2013 WL 12064483, at *2 (S.D. Fla. Sept. 30, 2013); see also Nat'l Union Ins. Co. of Pittsburgh, Pa v. Rite Aid of S.C. Inc., 210 F.3d 246, 252 (4th Cir. 2000) (internal quotation and citation omitted) ("At the outset, we note that precedent supports the proposition that a contracting party is the paradigm of an indispensable party.").  The court finds that CDJ plainly has an interest in the subject matter, as it has instituted the State DJ Action seeking a declaration regarding the same issue present here, Toates' employment status.

6

The court takes judicial notice of the fact that "CDJ is a South Carolina corporation with its principal place of business located [in] . . . South Carolina." (Mot. Int. Ex. A (State DJ Action Am. Compl. ¶ 1), ECF No. 32-3.) Toates is a resident of South Carolina. (Compl. ¶ 5, ECF No.1); (Ans. ¶ 3, ECF No. 10.) CDJ, as a South Carolina corporation, cannot be joined in this action because it would be aligned as a plaintiff since CDJ's interests are aligned with Plaintiffs. State Farm Mut. Ins. Co. v. Hugee, 115 F.2d 298, 301 (4th Cir. 1940) (affirming dismissal for lack of subject matter jurisdiction where the district court's realignment of the parties "in accordance with their respective interests" destroyed diversity); Am. Fid. & Cas. Co. v. Serv. Oil Co., 71 F. Supp. 932, 933 (W.D. S.C. 1947), aff'd, 164 F.2d 478 (4th Cir. 1947) (same); 16A Couch on Ins. § 229:32 (3d ed. 2022) ("[I]n an action against an insured and persons claiming against the insured for a declaration of nonliability, the insured will be realigned with the insurer where nonliability is claimed by the insurer on a ground which would also exonerate the insured."). Thus, as a plaintiff in the instant action, CDJ, a South Carolina entity, would destroy diversity jurisdiction.

Moreover, CDJ is an indispensable party in this case. A judgment in this case finding that Toates was an employee acting within the scope of his employment with CDJ could subject CDJ to vicarious liability if Toates is found liable for the Accident, and any damages could exceed the policy limits with Plaintiffs. Accordingly, in light of the pending State DJ Action, the fact that CDJ cannot be joined in the instant action without destroying diversity, and considering that the court cannot accord complete relief without prejudicing CDJ, the court finds that dismissal is appropriate.

### c. Nautilus Factors

In addition, Toates moves to dismiss this action based on the factors set forth in

Nautilus.  (Mem. Supp. Mot. Dismiss 8, ECF No. 29-1.)  The Federal Declaratory Judgment Act

provides that district courts "may declare the rights and other legal relations of any interested

party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C.

§ 2201(a).  "[A] declaration of parties' rights under an insurance policy is an appropriate use of

the declaratory judgment mechanism."  United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 494

(4th Cir. 1998).  "[D]istrict courts possess discretion in determining whether and when to

entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies

subject matter jurisdictional prerequisites."  Wilton, 515 U.S. at 282.  "[A] federal court should

[o]rdinarily decline, for reasons of efficiency and comity, to grant declaratory relief where

another suit is pending in a state court presenting the *same issues*, not governed by federal law,

between the *same parties*."  Nautilus Ins. Co., 15 F.3d at 377 (emphasis in original) (citations

and internal quotation marks omitted).

In cases where there are parallel state actions pending, "courts have broad discretion to

abstain from deciding *declaratory judgment* actions."  VonRosenberg v. Lawrence, 781 F.3d

731, 734 (4th Cir. 2015) (emphasis in original) (holding that Brillhart/Wilton abstention

standard applies to cases seeking solely declaratory relief and the more strict Colorado River

abstention standard applies to mixed claims).  As the Fourth Circuit has acknowledged, "hearing

declaratory judgment actions in such circumstances is ordinarily uneconomical, vexatious, and

risks a gratuitous interference with state court litigation."  Med Mut. Ins. Co. of N.C. v. Littaua,

35 F.4th 205, 208 (4th Cir. 2022) (internal quotations and citations omitted).

8

In <u>Nautilus</u>, the Fourth Circuit set forth four factors a court is to consider in determining whether to exercise jurisdiction over claims for solely declaratory relief where there is parallel state litigation:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; [] (iii) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law . . . [and (iv)] whether the declaratory judgment action is being used merely as a device for procedural fencing-that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

15 F.3d at 377 (citations and internal quotation marks omitted). "A district court has 'wide discretion' in applying these factors, but '[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.'" <u>Allstate Prop. & Cas. Ins. Co. v. Cogar</u>, 945 F. Supp. 2d 681, 687 (N.D. W. Va. 2013) (quoting <u>Centennial Life Ins. Co. v. Poston</u>, 88 F.3d 255, 257 (4th Cir. 1996)). These factors are not "a mechanical checklist, but rather should [be applied] flexibly in light of the particular circumstances of each case." <u>VRCompliance LLC v. HomeAway, Inc.</u>, 715 F.3d 570, 573 (4th Cir. 2013) (internal quotation marks omitted).

While weighing these factors, the court should remain mindful of the two guiding principals for rendering declaratory judgments: (1) when the judgment "will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) when it "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." <u>Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.</u>, 386 F.3d 581, 594 (4th Cir. 2004)

9

(quoting Aetna Cas & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).  A declaratory

judgment action should not be used "to try a controversy by piecemeal, or to try particular issues

without settling the entire controversy, or to interfere with an action which has already been

instituted."  Quarles, 92 F.2d at 325.  In addition,

> [t]here is no requirement that a parallel proceeding be pending in state court before
> a federal court should decline to exercise jurisdiction over a declaratory judgment
> action . . . To hold otherwise would in effect create a per se rule *requiring* a district
> court to entertain a declaratory judgment action when no state court proceeding is
> pending.  Such a rule would be inconsistent with our long-standing belief that
> district courts should be afforded great latitude in determining whether to grant or
> deny declaratory relief.

Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 423 (4th Cir. 1998) (per curiam)

(emphasis in original).  However, "the existence of such a proceeding should be a significant

factor in the district court's determination.  But it is not dispositive."  Id.

Turning to the instant matter, the currently pending State DJ Action is a parallel state

action, as it encompasses the same issue currently before the court.  "Suits are considered

parallel if substantially the same parties litigate substantially the same issues in different

forums."  Al-Abood ex rel. Al-Abood v. El-Shamari, 217 F.3d 225, 232 (4th Cir. 2000) (quoting

New Beckley Mining Corp. v. International Union, UMWA, 946 F.2d 1072, 1073 (4th Cir.1991)

(discussing abstention under Colorado River Water Conservation Dist. v. United States, 424

U.S. 800 (1976)).

Further, the fact that Plaintiffs are not parties to the State DJ Action is not dispositive.

Littaua, 35 F.4th 205.  In Littaua, the Fourth Circuit affirmed the district court's dismissal of a

declaratory judgment action pursuant to the Nautilus factors.  There, the parallel state action was

a medical malpractice action.  Id. at 207.  The defendant's insurer, who was not a party to the

state action, instituted an action in federal court seeking a declaration that it had no duty to indemnify or defend its insured.  Id.  The Fourth Circuit found that a "parallel or related proceeding" was pending in state court even though the plaintiff insurer in the federal action was not a party in the pending state action.  Id. at 205 n.1, 211.  Notably, the Court reached this conclusion while acknowledging that the "liability [issue pending in state court] is separate from the federal [declaratory judgment action] issue of whether [the insurance company] has a duty to defend and indemnify."  Id. at 211.

Although Plaintiffs seek a declaration that they have no obligation to defend or indemnify Toates under the policies, the Plaintiffs concede that coverage under the policies solely turns on whether Toates was an employee, acting in the scope of his employment at the time of the Accident, as opposed to an independent contractor.  (Resp. Opp'n 10, ECF No. 34.)  This is the very issue in the State DJ Action.  There, CDJ specifically seeks a declaration that Toates "was not an employee of CDJ," and that "[e]ven if Mr. Toates had been an employee of CDJ on October 7, 2020, his conduct which caused the injuries to Mr. Williams was outside the scope of his employment of CDJ . . . ."  (Mot. Dismiss Ex. D (State DJ Action Compl. 6), ECF No. 29-5.)  Further, all of the parties in the instant action except Plaintiffs, who, as set forth below, are in privity with their insured CDJ, and Williams, who has moved to intervene in this action, are parties to the State DJ Action.  Accordingly, the court finds that the parties to the State DJ Action are "substantially the same" as those involved in the instant action and that the issue of Toates' employment status is identical in each forum.  The court will now turn to consideration of the Nautilus factors.

11

As to the first factor, South Carolina's interest in deciding this issue, the court finds that it is neutral. States hold a strong interest when the question of state law is "difficult, complex, or unsettled." Nautilus, 15 F.3d at 378 (citing Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 236 (1984)). This factor is driven by considerations of the legal questions posed by a case, and whether "federal adjudication would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Riley v. Dozier Internet Law, PC, No. 09-1044, 2010 WL 1141079, at *3 (4th Cir. Mar. 24, 2010) (unpublished) (internal quotation marks omitted). South Carolina plainly has an interest in providing a forum for its residents to seek relief from torts committed within its jurisdiction and deciding insurance coverage issues impacting South Carolina residents. Further, South Carolina law applies to the claims asserted in these cases. However, "the routine application of settled principles of insurance law to particular disputed facts are not difficult or problematic questions of state law." Great Am. Ins. Co. v. Gross, 468 F.3d 199, 211 (4th Cir. 2006). The court finds that the state law to be applied in this case is not overly complex.

As to the second factor, the court finds that the state court can more efficiently resolve the issues presented here in the State DJ Action. In evaluating these efficiency concerns, the Supreme Court has directed courts to focus primarily on "whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding[s]" that are already "pending in the state court." Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942).

This in turn requires careful inquiry into "the scope of the pending state court proceeding[s]," including such matters as "whether the claims of all parties in interest [to the

12

federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." Id. at 495.  Exercising jurisdiction over the instant action presents a substantial risk that it would "produce inefficiencies by needlessly duplicating efforts, generating piecemeal litigations, and expending limited judicial resources."  Riley, 2010 WL 1141079, at *4; see also Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 258 (4th Cir. 1996) (affirming abstention as appropriate where "the state court action contains a defendant and a number of issues not present in the federal action . . . [meaning] issuance of a declaratory judgment would settle part of the controversy [but] would not settle the entire matter").

Although the Plaintiffs are not parties in the State DJ Action or the Underlying Tort Action, they certainly had the ability to bring the instant declaratory judgment action in state court and in fact, their insured, CDJ,[2] filed the State DJ Action on the same day the instant action was instituted.  See Littaua, 35 F.4th at 211 (whether an insurance company was a party to the underlying liability action is not the only fact relevant to the efficiency factor analysis and consideration of whether the insurance company "had the ability to bring this same declaratory action in state court where the [underlying action] was pending" is appropriate).  In the State DJ Action, CDJ seeks a declaration as to the same factual issue upon which the coverage issues in this case turn.

Moreover, South Carolina's procedural rules would permit Plaintiffs to intervene in the

---

[2] Toates alleges that the Plaintiffs are providing CDJ with counsel in the State DJ Action. (Mem. Supp. Mot. Dismiss 8, ECF No. 29-1.)  Notably, Plaintiffs have not responded to this allegation.  Moreover, Plaintiffs' assertions regarding the extent of discovery conducted in the State DJ Action demonstrates that they have significant involvement in that case.

13

State DJ Action.  S.C. R. Civ. P. 19, 24.  Further, as discussed previously, CDJ cannot be joined

in the instant action.  In addition, Williams, who is seeking to intervene in this action, is a party

to the State DJ Action.  Thus, the State DJ Action would be a more comprehensive and

conclusive forum for deciding these issues.  This is particularly true where, as here, Plaintiffs

and CDJ are in privity and CDJ cannot be joined as a necessary party.  "The concept of privity

requires an alignment of interests and not an exact identity of parties."  Weinberger v. Tucker,

510 F.3d 486, 492 (4th Cir. 2007) (discussing privity in the context of collateral estoppel).  An

insurer is typically held to be in privity with its insured.  See State Farm Fire and Cas. Co. v.

Garrity, 785 F.2d 1225, 1227 (4th Cir. 1986) ("In a typical case, the insurance company is

estopped because it is in privity with the insured.  The interests of the company and the insured

in opposing the plaintiff's claim are identical.").  The court finds that Plaintiffs' interests are

sufficiently aligned with those of CDJ.  Each seeks a finding that Toates was not an employee of

CDJ and was not acting in the scope of his employment.  (Mot. Dismiss Ex. D (State DJ Action

Compl.), ECF No. 29-5.)  As Plaintiffs acknowledge, "[t]he only question presented [in the

instant action] is whether Toates was an employee of CDJ acting in the course and scope of his

employment at the time of the accident."  (Resp. Opp'n 10, ECF No. 34.)  A judgment in either

action would likely decide a dispositive factual issue in the other.

Further, permitting this case to proceed in this court would result in duplicative

discovery and use of judicial resources.  Moreover, as discussed above, CDJ is a necessary party

to the instant action.  See Nat'l Union Ins. Co. of Pittsburgh, Pa v. Rite Aid of S.C. Inc., 210

F.3d 246, 252 (4th Cir. 2000) (internal quotation and citation omitted) ("At the outset, we note

that precedent supports the proposition that a contracting party is the paradigm of an

14

indispensable party.")  Yet, CDJ cannot be joined because it would be aligned as a Plaintiff in this action and, like Toates, is domiciled in South Carolina.  Thus, joining CDJ would destroy diversity jurisdiction.  However, these concerns are not present in the South Carolina courts, "the only system with the jurisdictional power to resolve all facets of this controversy . . . ." Mitcheson, 955 F.2d at 239; see also Hartford Cas. Ins. Co. v. BB&T Financial Corp., 131 F. Supp. 2d 752, 755 (W.D.N.C. 2001) ("While it is true that this court could efficiently adjudicate the rights and responsibilities between [the parties to this action], the rights of all of the parties . . . can be resolved in the . . . action now pending in South Carolina state court.").  Accordingly, the court finds that this issue weighs in favor of dismissal.

As to the third factor, the court finds that exercising jurisdiction in this case would result in unnecessary entanglement between the federal and state court systems due to the overlapping factual issues that must be decided in each action.  Indeed, this case has already resulted in entanglement, as Williams has filed a motion to dismiss in the State DJ Action citing the instant action as one basis for dismissal.  (Resp. Opp'n Ex. 1 (State DJ Action Mot. Dismiss), ECF No. 34-1.)

Plaintiffs argue that entanglement is not a concern because "[t]his case presents no overlapping issues of law or fact."  (Id. 10, ECF No. 34.)  Specifically, Plaintiffs assert that there are no overlapping issues because they "seek a declaratory judgment that they have no duty to defend or indemnify [Toates] in [ ] either the Tort Action or state declaratory judgment action as well as that Mr. Williams' claims, injuries, and causes of action against [Toates] are not covered under Plaintiffs' Policies."  (Id. 6, ECF No. 34.)  Plaintiffs maintain that "[t]hese issues are much broader than whether [Toates] was negligent, employed at the time of the accident, or

15

acting within the scope of employment. (Id., ECF No. 34.) However, these contentions are belied by Plaintiffs' admission that "[t]he only question presented [in the instant action] is whether Toates was an employee of CDJ acting in the course and scope of his employment at the time of the accident." (Id. 10, ECF No. 34); see also (id. 3, ECF No. 34) ("Through this stage of discovery, Plaintiffs have developed a fairly complete picture of a man, Christopher Toates, who was not an employee of CDJ.").[3]

As discussed previously, there are currently two state court lawsuits raising this same issue. CDJ has sought a declaration in the State DJ Action that, inter alia,"Toates was not an employee of CDJ," and that "even if Toates had been an employee of CDJ on October 7, 2020, his conduct . . . was outside the scope of his employment of CDJ[.]" (Mot. Int. Ex. A (State DJ Action Am. Compl. 6), ECF No. 32-3.) In addition, Williams alleges in the Underlying Tort Action that Toates was acting "in the course and scope of his duties as an employee of [CDJ]" when the Accident occurred, and the covenant not to execute avers that the Underlying Tort Action is being prosecuted "solely for the purpose of establishing a claim for automobile liability coverage and/or underinsured motorist coverage, under policies issued to C. Dan Joyner by The Hartford Insurance Company, . . . which may provide coverage for Christopher Toates." (Mot. Dismiss Ex. C (Underlying Tort Action Am. Compl. ¶ 7), ECF No. 29-4); (Resp. Opp'n Mot. Int. Ex. A (Covenant 3), ECF No. 35-1.)

_____

[3] Plaintiffs also assert that the "extensive discovery" conducted in this case cautions against dismissal. (Resp. Opp'n 3, ECF No. 34.) However, this concern is minimal. It is likely that any discovery produced in this case would also be sought in the State DJ Action. Further, any discovery produced in the instant action may be used in the State DJ Action. See PBM Nutritionals, LLC v. Ace Am. Ins. Co., Civil Action No. 3:09cv194, 2010 WL 724015, at *4 (E.D. Va. Mar. 1, 2010) (unpublished).

Accordingly, the factual issue to be decided in the State DJ Action is identical to the one presented here. See Kapiloff, 155 F.3d at 494 ("[S]ince both actions raise[ ] the same core issues of law and fact, and both actions aim[ ] at determining the rights of the parties under the insurance policy, potential entanglement between the state and federal courts [is] a genuine possibility."); Mitcheson v. Harris, 955 F.2d 235, 239 (4th Cir. 1992) (finding entanglement where federal court "would have to decide a critical issue that will be addressed in the pending state court action . . . [and] the insured may well be collaterally estopped from relitigating the overlapping issues decided in the federal action").

"The concern about entanglement turns on what preclusive effect the declaratory judgment action will have on the state action." Hartford Cas. Ins. Co. v. Wugin, 247 F. Supp. 2d 723, 727 (D. Md. 2003) (citing Mitcheson, 955 F.2d at 239-40 ("The insured may well be collaterally estopped from relitigating the overlapping issues decided in the federal action.")). However, "certainty of preclusion is not the standard. Rather, the factor is concerned with those issues of fact that *might* preclude the state court." Littaua, 35 F.4th at 212 (emphasis in original) (citing Trustguard Ins. Co. v. Collins, 942 F.3d 195, 202 (4th Cir 2019) ("[W]e must look closely at any potentially preclusive consequences that our decision might have on the state court proceeding, and vice versa." ); see also Mitcheson, 955 F.2d at 239 ("Such issue preclusion will likely frustrate the orderly progress of state court proceedings by leaving the state court with some parts of the case foreclosed from further examination but still other parts in need of full scale resolution.").

Resolving the core factual issue in this case, whether Toates was an independent contractor or an employee acting in the scope of his employment at the time of the Accident,

may have a preclusive effect in the State DJ Action.  Likewise, any decision in the State DJ Action may have a preclusive effect in the instant action.

"Under the doctrine of collateral estoppel, once a final judgment on the merits has been reached in a prior claim, the relitigation of those issues actually and necessarily litigated and determined in the first suit are precluded as to the parties and their privies in any subsequent action based upon a different claim." Richburg v. Baughman, 351 S.E.2d 164, 166 (S.C. 1986). "A party may assert nonmutual collateral estoppel to prevent relitigation of a previously litigated issue unless the party sought to be precluded did not have a fair and full opportunity to litigate the issue in the first proceeding, or unless other circumstances justify providing the party an opportunity to relitigate the issue." Wade v. Berkeley Cnty., 498 S.E.2d 684, 687 (S.C. 1998) (citation omitted).  Further, a nonparty to a prior action can be precluded from relitigating an issue "if he is in privity with a party to the prior action against whom an adverse finding is made." Id. (citation omitted).  "To be in privity, a party's legal interests must have been litigated in the prior proceeding." Id.

As noted above, an insurer is typically held to be in privity with its insured, and as the Plaintiffs concede, the issue of whether Toates was an independent contractor or an employee acting within the scope of his employment would necessarily be decided in the instant action. Garrity, 785 F.2d at 1227 ("In a typical case, the insurance company is estopped because it is in privity with the insured.  The interests of the company and the insured in opposing the plaintiff's claim are identical.")  Moreover, there is some evidence that Plaintiffs are "direct[ing] or "controll[ing] the litigation" in the State DJ Action.  See In re Estate of Brown. 846 S.E.2d 342, 349 (S.C. 2020) (evidence that party directed or controlled prior litigation is relevant in privity

analysis for purposes of collateral estoppel). Plaintiffs have not challenged Toates' allegation that Plaintiffs are providing CDJ with counsel.

Thus, "if the court were to resolve the [insurance] coverage issue in this action, its decision would likely have a preclusive effect in state court." XL Specialty Ins. Co.v. Hughs, Civil Action No. 2:21-cv-03254-DCN, 2022 WL 447184, at *3 (D.S.C. Feb. 14, 2022) (unpublished). At a minimum, deciding the overlapping factual issues regarding Toates' employment status in the instant action will likely result in "unnecessary entanglement" in the State DJ Action. Accordingly, the court finds that this factor weighs in favor of dismissal.

The court also finds that the fourth factor weighs in favor of dismissal, as there is evidence that the Plaintiffs have engaged in procedural fencing. A party engages in procedural fencing where the goal of its lawsuit is "to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable." Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998) (internal quotation marks omitted). Similarly problematic is where "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." Nautilus, 15 F.3d at 380. CDJ, an entity which is in privity with Plaintiffs and would be a nondiverse entity in the instant action, filed the State DJ Action. Instead of joining with CDJ as a party in the State DJ Action where the exact same issue is being litigated, Plaintiffs filed the instant action separately in federal court. This is evidence "that this declaratory judgment action was filed in an effort to obtain a federal forum in a case not otherwise removable." Nautilus, 15 F.3d at 380.

At a minimum, this is certainly suspect, and a reasonable inference could be drawn that Plaintiffs filed the instant action in an attempt to obtain a favorable decision in federal court that would have a preclusive effect in the State DJ Action.  U.S. Fire Ins. Co. v. Albex Aluminum, Inc., No. 04-4426, 2006 WL 41185, at *4 (6th Cir. Jan. 6, 2006) (unpublished) (finding no abuse of discretion where district court found that the state court's consideration of the issue raised in federal court was inevitable and thus it was apparent that plaintiff was "trying to secure a favorable ruling . . . [in federal court], rather than take the risk of an unfavorable one in state court").  Accordingly, the court concludes that this factor weighs in favor of dismissal.

### III. CONCLUSION[4]

Based on the foregoing, the court finds that the balance of the Nautilus factors weighs in favor of dismissal.  In addition, the court finds that this action should be dismissed because a necessary and indispensable party, CDJ, cannot be joined.  Accordingly, the court declines to exercise jurisdiction over this declaratory judgment action in light of the parallel state declaratory judgment action currently pending.

---

[4] Having found dismissal appropriate under Nautilus, the court declines to address Toates' remaining arguments.

20

It is therefore

    **ORDERED** that Toates' motion to dismiss, docket number 29, is granted.  It is further

    **ORDERED** that Williams' motion to intervene, docket number 32, is dismissed as

moot.

    **IT IS SO ORDERED.**


                              Henry M. Herlong, Jr.
                              Senior United States District Judge

Greenville, South Carolina
July 27, 2022